# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| JEFFREY A. SIFFORD, | ) | |
|     Plaintiff | ) | |
| v. | ) | Civil Action No. 2:13cv00019 |
| | ) | **MEMORANDUM OPINION** |
| CAROLYN W. COLVIN, | ) | |
|  Acting Commissioner of | ) | |
|  Social Security, | ) | By:   PAMELA MEADE SARGENT |
|     Defendant | ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Jeffrey A. Sifford, ("Sifford"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying his claims for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423 and 1381 *et seq.* (West 2011 & West 2012). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge upon transfer by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642

(4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Sifford protectively filed his applications for SSI and DIB on June 19, 2009, alleging disability as of June 1, 2009, due to back and hip problems and depression. (Record, ("R."), at 24, 208-14, 242, 266.) The claims were denied initially and upon reconsideration. (R. at 132-34, 138, 139-44.) Sifford then requested a hearing before an administrative law judge, ("ALJ"). (R. at 146.) A hearing was held on October 26, 2011, at which Sifford was represented by counsel. (R. at 37-64.)

By decision dated December 8, 2011, the ALJ denied Sifford's claims. (R. at 24-32.) The ALJ found that Siffford met the disability insured status requirements of the Act for DIB purposes through December 31, 2013. (R. at 26.) The ALJ found that Sifford had not engaged in substantial gainful activity since June 1, 2009, the alleged onset date. (R. at 26.) The ALJ found that the medical evidence established that Sifford had severe impairments, namely a disc bulge, degenerative disc desiccation and changes, narrowing in the lumbar spine and mild chronic obstructive pulmonary disease, ("COPD"), but the ALJ found that Sifford did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 26-27.) The ALJ found that Sifford had the residual functional capacity to perform light work,[1] that required him to only occasionally balance, stoop, crouch

---

[1] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, he also can perform sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2013).

and climb ramps and stairs, that did not require him to crawl, kneel or operate foot controls, to have concentrated exposure to temperature extremes, excess respiratory irritants, excessively loud background noise and that did not expose him to hazardous machinery, unprotected heights, vibrating surfaces, ladders, ropes and scaffolds. (R. at 28-29.) The ALJ found that Sifford was unable to perform his past relevant work. (R. at 30.) Based on Sifford's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that a significant number of jobs existed in the national economy that Sifford could perform, including jobs as a packer, an assembler, an inspector/tester/sorter. (R. at 31.) Thus, the ALJ concluded that Sifford was not under a disability as defined by the Act and was not eligible for DIB or SSI benefits. (R. at 32.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2013).

After the ALJ issued her decision, Sifford pursued his administrative appeals, (R. at 16), but the Appeals Council denied his request for review. (R. at 1-6.) Sifford then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2013). This case is before this court on Sifford's motion for summary judgment filed December 30, 2013, and the Commissioner's motion for summary judgment filed March 4, 2014.

## II. Facts

Sifford was born in 1964, (R. at 41, 208, 213), which, at the time of the ALJ's decision, classified him as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). Sifford has a high school education and vocational training as a computer controlled cutting machine operator. (R. at 41-42, 247.) He

has past work experience as a grinder operator, a router loader, a construction laborer and a butcher/meat dresser. (R. at 59-60, 231.)

Vocational expert, John Newman, testified at Sifford's hearing. (R. at 58-63.) Newman stated that Sifford's past work as a grinder operator was medium,[2] semi-skilled work, his job as a router loader was medium, unskilled work, his job as a construction laborer was heavy[3] and semi-skilled work, and his job as a butcher/meat dresser was heavy, skilled work. (R. at 59-60.) The ALJ asked Newman to consider a hypothetical individual who could perform light work, who could occasionally climb ramps and stairs, balance, stoop and crouch, who should avoid concentrated exposure to extreme temperatures, excess humidity, irritants and pollutants, who should avoid crawling, kneeling, hazardous machinery, unprotected heights, climbing ladders, ropes and scaffolds, vibrating surfaces, excessively loud background noise and foot controls. (R. at 60.) Newman testified that such an individual could not perform any of Sifford's past work. (R. at 60.) Newman identified jobs that existed in significant numbers in the national or regional economy that such an individual could perform, including jobs as an assembler, a bottle packer and an inspector/tester/sorter. (R. at 60-61.) Newman stated that there would be no jobs available that the individual could perform should the individual be limited as indicated in the May 17, 2010, assessment of Dr. Samina Yousuf, M.D. (R. at 61-63, 428.)

---

[2] Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If an individual can do medium work, he also can do sedentary and light work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c) (2013).

[3] Heavy work is defined as work that involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If an individual can do heavy work, he also can do sedentary, light and medium work. *See* 20 C.F.R. §§ 404.1567(d), 416.967(d) (2013).

In rendering her decision, the ALJ reviewed records from Castlewood Community Medical Center; Community Medical Care 1; Dr. Robert McGuffin, M.D., a state agency physician; Dr. Michael Hartman, M.D., a state agency physician; Russell County Medical Center; Dr. William Humphries, M.D.; Dr. John C. Fraser, M.D., a neurologist; Dr. Mark Shaffrey, M.D., a neurosurgeon; Dr. Samina Yousuf, M.D.; Dr. Joselin Tacas Tacas, M.D.; and Dr. Vijay Kumar, M.D. Sifford's attorney also submitted medical reports from Castlewood Community Medical Center and Dr. Yousuf to the Appeals Council.[4]

On October 16, 2008, Dr. Vijay Kumar, M.D., a physician with Community Medical Care 1, reported that Sifford's shoulders showed no point tenderness and no crepitations with a full range of motion, his elbows showed no swelling, tenderness or crepitations and had a full range of motion, and he had full range of motion of the hands and fingers without swelling or joint deformities. (R. at 312-15.) Sifford's hips and knees had no tenderness, crepitations or swelling, and he had full range of motion. (R. at 315.) Sifford denied muscle aches, weakness, cramps, spasms and joint stiffness, pain or swelling. (R. at 313.) Dr. Kumar noted that Sifford's hypertension was controlled with medication. (R. at 312.)

On February 11, 2009, Dr. Joselin Tacas Tacas, M.D., a physician with Community Medical Care 1, saw Sifford for complaints of right ankle, leg and hip pain. (R. at 316-18.) Dr. Tacas Tacas reported that Sifford had tenderness on range of motion in these areas. (R. at 318.) Sifford had an antalgic gait, and no gross sensory deficits were noted. (R. at 318.) On May 1, 2009, Sifford reported that his

---

[4] Since the Appeals Council considered and incorporated this additional evidence into the record in reaching its decision, (R. at 1-6), this court also must take these new findings into account when determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.,* 953 F.2d 93, 96 (4th Cir. 1991).

right ankle and leg pain had resolved. (R. at 320.) On May 26, 2009, Sifford reported right hip and ankle pain. (R. at 324.) Sifford had tenderness on range of motion in his right knee, hip and ankle. (R. at 326.) Sifford had an antalgic gait, and no gross sensory deficits were noted. (R. at 326.) On May 26, 2009, an x-ray of Sifford's lumbar spine showed mild degenerative changes. (R. at 303.) X-rays of Sifford's right hip, right ankle and right knee taken the same day were normal. (R. at 304-06.) On June 9, 2009, an MRI of Sifford's lumbar spine showed right L5-S1 disc protrusion with neural impingement, minimal L4-L5 disc bulge without neural impingement and mild anterior spur formation at T12-L4 disc levels. (R. at 302.) On June 23, 2009, Sifford complained of back and right hip pain with tingling, burning and numbness in his right leg. (R. at 328-30.) Dr. Tacas Tacas reported that Sifford had tenderness on range of motion in these areas. (R. at 330.) Sifford had an antalgic gait, and no gross sensory deficits were noted. (R. at 330.) On July 22, 2009, Jenny Pruitt, PA-C, a certified physician's assistant at Community Medical Care 1, noted that Sifford's hypertension, disc disorder and hyperlipidemia were all controlled. (R. at 334-36.) On October 21, 2009, Sifford reported that physical therapy had helped his back pain. (R. at 371.) On November 25, 2009, Sifford reported that his chronic lower back pain, right leg pain, COPD and allergies were controlled with medication. (R. at 367-69.)

On September 21, 2009, Dr. Mark Shaffrey, M.D., a neurosurgeon at the University of Virginia Hospital, saw Sifford for his complaints of chronic low back pain with intermittent radiation down his right lower extremity. (R. at 347-48.) Sifford had tenderness to palpation in his lumbar spine with no evidence of muscle spasm. (R. at 347.) He had pain and limited weakness throughout his bilateral lower extremities with positive straight leg raising tests in both legs. (R. at 347.) Since it was Sifford's desire to proceed with all conservative measurers possible

prior to considering any type of surgical intervention, Dr. Shaffrey prescribed physical therapy. (R. at 348.)

On November 10, 2009, Dr. Robert McGuffin, M.D., a state agency physician, opined that Sifford had the residual functional capacity to perform medium work. (R. at 100-01.) No postural, manipulative, visual, communicative or environmental limitations were noted. (R. at 100-01.)

On November 19, 2009, Dr. John C. Fraser, M.D., a neurologist, examined Sifford for his complaints of right leg pain. (R. at 355-56.) Sifford had difficulty rising to his toes and doing a knee bend on the right. (R. at 355.) His right ankle reflex was absent, and no other sensory and neurological abnormalities were identified. (R. at 355.) Dr. Fraser found that a referral for consideration of surgery was reasonable. (R. at 355.) Sifford was to let him know if he elected to proceed with surgery. (R. at 355.)

On January 19, 2010, Dr. Tacas Tacas reported that Sifford's cervical and thoracic spine showed no abnormal curvatures or tenderness, and he had full range of motion. (R. at 365.) He had paraspinal tenderness in his lumbar spine. (R. at 365.) Dr. Tacas Tacas reported that Sifford's shoulders showed no point tenderness and no crepitations with a full range of motion, his elbows showed no swelling, tenderness or crepitations and had a full range of motion, and he had full range of motion of the hands and fingers without swelling or joint deformities. (R. at 365.) Sifford had tenderness with range of motion in his right hip, knee and ankle. (R. at 365.) Sifford had an antalgic gait, and no gross sensory deficits were noted. (R. at 365.) She noted that Sifford's hypertension and disc disorder were controlled. (R.

-7-

at 365.) On March 22, 2010, Sifford reported that his chronic back pain was controlled with medication. (R. at 81, 377-79.)

On April 22, 2010, Dr. Michael Hartman, M.D., a state agency physician, opined that Sifford had the residual functional capacity to perform light work. (R. at 116-17.) Dr. Hartman found that Sifford could occasionally climb ramps, stairs, ladders, ropes and scaffolds, balance, stoop, kneel, crouch and crawl. (R. at 116-17.) No manipulative, visual, communicative or environmental limitations were noted. (R. at 117.)

On May 17, 2010, Dr. Samina Yousuf, M.D., a physician with Community Medical Care, completed an assessment indicating that Sifford had the ability to stand and/or walk a total of zero to two hours in an eight-hour workday. (R. at 429.) Dr. Yousuf found that Sifford could sit up to three hours in an eight-hour workday and that he could do so for up to 20 minutes without interruption. (R. at 429.) Dr. Yousuf found that Sifford could occasionally lift and carry items weighing less than 10 pounds. (R. at 429.) Sifford could frequently finger, grasp and handle and never stoop, bend or crouch. (R. at 429.) Dr. Yousuf opined that Sifford frequently experienced pain severe enough to interfere with his ability to attend and concentrate. (R. at 429.) Dr. Yousuf reported that Sifford had positive straight leg raising test on the right, impaired sleep, depression, anxiety, sensory loss, muscle weakness and reduced range of motion. (R. at 429.) Dr. Yousuf opined that Sifford would miss more than four days of work per month. (R. at 429.)

On June 17, 2010, Dr. Yousuf completed an assessment concerning Sifford's lumbar spine impairment. (R. at 430-33.) She noted that Sifford had positive

straight leg raising test on the right, abnormal gait, sensory loss, tenderness in the lower back, muscle weakness in the right leg and impaired sleep. (R. at 430-31.) She reported that Sifford would constantly experience pain severe enough to interfere with his ability to attend and concentrate. (R. at 431.) Dr. Yousuf opined that Sifford could walk less than one block without interruption and sit and/or stand for up to 10 minutes at a time. (R. at 431.) Dr. Yousuf found that Sifford could stand and/or walk less than two hours in an eight-hour workday and sit for up to two hours in an eight-hour workday. (R. at 432.) She opined that Sifford would need to walk around every 10 minutes. (R. at 432.) Dr. Yousuf found that Sifford would need to be allowed to shift positions at will from sitting, standing or walking and that he would need to do so every 10 to 15 minutes. (R. at 432.) She noted that Sifford must use a cane while engaging in occasional standing and walking. (R. at 432.) Dr. Yousuf found that Sifford could occasionally lift and carry items weighing 10 pounds. (R. at 432.) Sifford should never twist, stoop or bend. (R. at 432.) Dr. Yousuf opined that Sifford would miss more than four days of work per month. (R. at 433.)

In June 2010, August 2010, October 2010, and November 2010 and at each of his monthly office visits throughout 2011, Sifford repeatedly reported that his back and leg pain was controlled with medication. (R. at 69, 73, 456-57, 474, 479, 486, 493, 499, 511, 515, 518, 529, 532.)

On June 14, 2011, Dr. Yousuf completed a medical source statement indicating that Sifford was diagnosed with lumbar disc herniation with nerve impingement, right lower extremity weakness, neural impingement at the L5-S1 level and disc bulge at the L4-L5 level. (R. at 452-55.) She opined that Sifford could sit, stand and/or walk for up to two hours in an eight-hour workday. (R. at

453.) Dr. Yousuf found that Sifford could occasionally lift and carry items weighing less than 10 pounds. (R. at 453.) She opined that Sifford had significant limitations in his ability to perform repetitive reaching, handling, fingering or lifting. (R. at 453.) Dr. Yousuf noted that Sifford must use a cane while standing and/or walking. (R. at 453.) She also opined that Sifford could not stoop, push, kneel, work around heights, pull or bend. (R. at 454.) Dr. Yousuf reported that Sifford would miss more than three days of work per month. (R. at 455.)

On June 21, 2011, Dr. William Humphries, M.D., examined Sifford at the request of Disability Determination Services. (R. at 441-45.) Sifford reported that he smoked up to two-and-one-half packs of cigarettes a day, and that he had smoked since age five or six. (R. at 442.) Dr. Humphries noted that Sifford was in moderate distress due to back discomfort. (R. at 442.) Sifford had a mildly reduced range of motion of his neck. (R. at 442.) He had mild paravertebral muscle spasm and tenderness to palpation in his lumbar region. (R. at 442.) Straight leg raising tests were negative bilaterally. (R. at 443.) Sifford had a moderately antalgic gait on the right. (R. at 443.) X-rays of Sifford's lumbar spine showed thoracolumbar spondylosis with degenerative disc space narrowing at the L5-S1 level. (R. at 439.) Dr. Humphries diagnosed hypertension, chronic lumbar strain with intermittent right sciatica, mild COPD and mild diminished hearing. (R. at 444.) Dr. Humphries opined that Sifford could sit, stand and/or walk six hours in an eight-hour workday; occasionally lift items weighing up to 25 pounds and frequently lift items weighing up to 10 pounds; occasionally climb; never kneel or crawl; and that he should avoid heights, hazards and fumes. (R. at 444.)

Dr. Humphries completed a medical assessment indicating that Sifford could frequently lift and carry items that weighed up to 20 pounds and occasionally lift

-10-

and carry items that weighed up to 50 pounds. (R. at 446-51.) He opined that Sifford could sit, stand and/or walk a total of six hours in an eight-hour workday and that he could do so for up to one hour without interruption. (R. at 447.) Dr. Humphries found that Sifford could frequently use his hands for reaching, handling, fingering, feeling and pushing/pulling. (R. at 448.) He found that Sifford could occasionally use foot controls with his left foot and never use foot controls with his right foot. (R. at 448.) Dr. Humphries found that Sifford could frequently balance, stoop and crouch, occasionally climb stairs and ramps and never climb ladders or scaffolds, kneel or crawl. (R. at 449.) He found that Sifford had the ability to hear and understand simple oral instructions and to communicate simple information. (R. at 449.) He further found that Sifford could frequently tolerate exposure to loud noise and occasionally work around unprotected heights, moving mechanical parts, humidity and wetness, dust, odors, fumes and pulmonary irritants, temperature extremes and vibrations and occasionally operate a motor vehicle. (R. at 450.)

On January 12, 2012, Dr. Yousuf completed a medical assessment indicating that Sifford could occasionally lift and carry items weighing up to 20 pounds and frequently lift and carry items weighing less than 10 pounds. (R. at 536-39.) She opined that Sifford could stand and/or walk less than two hours in an eight-hour workday and sit less than six hours in an eight-hour workday. (R. at 536-37.) Sifford's ability to push and/or pull was limited in both the upper and lower extremities. (R. at 537.) Dr. Yousuf reported that Sifford could occasionally kneel and never climb, balance, crouch, crawl or stoop. (R. at 537.) She found no limitations in Sifford's ability to use his upper extremities. (R. at 538.) Dr. Yousuf reported that Sifford would be limited in his ability to work around temperature

extremes, dust, vibration, humidity/wetness, machinery, heights, fumes, odors, chemicals and gases. (R. at 539.)

### III. Analysis

The Commissioner uses a five-step process in evaluating DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2013). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2013).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2011 & West 2012); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

Case 2:13-cv-00019-PMS   Document 20   Filed 09/08/14   Page 12 of 15   Pageid#: 630

In his brief, Sifford argues that the ALJ erred by failing to give controlling weight to the opinions of his treating physician, Dr. Yousuf. (Plaintiff's Memorandum In Support Of His Motion For Summary Judgment, ("Plaintiff's Brief"), at 5-6.)

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained her findings and her rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Sifford argues that the ALJ erred by failing to give controlling weight to the opinions of his treating physician, Dr. Yousuf. (Plaintiff's Brief at 5-6.) On May 17, 2010, Dr. Yousuf completed a medical assessment restricting Sifford to less than sedentary work[5] and finding that he would likely miss more than four workdays per month. (R. at 429.) On June 17, 2010, Dr. Yousuf repeated these restrictions and on June 14, 2011, Dr. Yousuf restricted Sifford to less than sedentary work. (R. at 430-33, 452-55.) On January 12, 2012, Dr. Yousuf stated that Sifford could perform a limited range of light work. (R. at 536-39.) The ALJ

---

[5] Sedentary work involves lifting items weighing up to 10 pounds with occasional lifting or carrying of articles like docket files, ledgers and small tools. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a) (2013). "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

found Dr. Yousuf's opinions to be inconsistent with the record as a whole and with the mostly benign findings on Sifford's physical examinations. (R. at 30.) Based on my review of the record, I agree.

A medical opinion is entitled to greater weight when it is supported by relevant evidence, "particularly medical signs and laboratory findings," and when it is consistent with the "record as a whole." 20 C.F.R. §§ 404.1527(c)(2)-(4). 416.927(c)(2)-(4). A medical opinion from an acceptable treating source is given "controlling" weight only when it is "well-supported" by "medically acceptable clinical and laboratory diagnostic techniques" and when it is "not inconsistent" with the other "substantial" evidence in the case. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Progress notes from Community Medical Care 1 show that Sifford's shoulders showed no point tenderness and no crepitations with a full range of motion, his elbows showed no swelling, tenderness or crepitations and had a full range of motion, and he had full range of motion of the hands and fingers without swelling or joint deformities. (R. at 312-15, 365.) Sifford's hips and knees had no tenderness, crepitations or swelling, and he had full range of motion. (R. at 315.) Sifford denied muscle aches, weakness, cramps, spasms and joint stiffness, pain or swelling. (R. at 313.) In May 2009, x-rays of Sifford's lumbar spine showed mild degenerative changes, and x-rays of his right hip, right ankle and right knee were normal. (R. at 303-06.) An MRI of Sifford's lumbar spine performed in June 2009, showed right L5-S1 disc protrusion with neural impingement, minimal L4-L5 disc bulge without neural impingement and mild anterior spur formation at the T12-L4 disc levels. (R. at 302.) In October 2009, Sifford reported that physical therapy helped his back pain. (R. at 371.) In addition, Sifford repeatedly reported that his

chronic lower back pain, right leg pain, COPD and allergies were controlled with medication. (R. at 69, 73, 365, 367-69, 456-57, 474, 479, 486, 493, 499, 511, 515, 518, 529, 532.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *See Gross v. Heckler,* 785 F.2d 1163, 1166 (4th Cir. 1986). Also, Sifford continues to refuse to consider surgical treatment, which suggests that conservative treatment adequately addresses his symptoms.

Furthermore, if Dr. Yousuf's opinions were given controlling weight, Sifford would need to spend upwards of four hours of the workday lying down. Yet, none of Dr. Yousuf's or the others' medical records make any mention of the need to lie down throughout the day. Also, without any noticeable change in Sifford's condition, Dr. Yousuf's opinions as to his physical residual functional capacity have varied from the ability to perform less than sedentary work to almost the full range of light work. Thus, Dr. Yousuf's opinions are inconsistent enough with her own records to justify the ALJ's decision not to give them controlling weight. The ALJ's finding that Sifford could perform a limited range of light work is supported by Dr. Yousuf's January 12, 2012, assessment, as well as the assessments of Dr. McGuffin, Dr. Hartman and Dr. Humphries. Thus, I find that substantial evidence supports the ALJ's weighing of the medical evidence and the Commissioner's decision to deny benefits. An appropriate order will be entered.

DATED: September 8, 2014.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE

-15-

Case 2:13-cv-00019-PMS   Document 20   Filed 09/08/14   Page 15 of 15   Pageid#: 633